**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | |
|---|---|
| SARA SHERLEY, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CUSTOM FAT LOSS, LLC d/b/a VITALITY WELLNESS & WEIGHT LOSS<br><br>Serve registered agent at:<br>2107 Weber Avenue #102<br>Louisville, Kentucky 40205<br><br>Defendant. | Case No.:  3:24CV-671-DJH<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

COMES NOW Plaintiff Sara Sherley, individually, and on behalf of all others similarly situated, and for her Class Action Complaint against Defendant Custom Fat Loss, LLC d/b/a Vitality Wellness & Weight Loss, states:

**BACKGROUND, PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Sara Sherley ("Plaintiff") brings this case to protect the privacy rights of herself and a class of similarly situated people who were sent text messages on their phones by Defendant Custom Fat Loss, LLC d/b/a Vitality Wellness & Weight Loss ("Defendant" or "Vitality") after expressly requesting that Defendant stop sending them text messages.

2. In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3.  The TCPA affords special protections for people who continue to receive marketing text messages from a company after expressly requesting that the company stop sending such text messages. Specifically, the TCPA and its corresponding regulations provide that the company to whom the request is made must place the phone number of the person making the request on its internal do-not-call list and cease communications with the number. The TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do-not-call list is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

4.  From January 2024 until October 2024 alone, approximately 43.7 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited November 18, 2024). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

5.  At all times relevant to this Complaint, Plaintiff resided in the State of Kentucky and has been a citizen of the State of Kentucky.

6.  Plaintiff brings this action on behalf of herself, and all others similarly situated.

7.  Defendant is a Kentucky limited liability company that has been in good standing to transact business at all times relevant to this Complaint.

8.  Defendant's principal office and headquarters are located in Louisville, Kentucky.

9. Defendant's business is selling consumers various body transformation products and services, including weight loss products and services.

10. Defendant has location in Kentucky and Indiana.

11. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 as this case presents a federal question under the TCPA.

12. This Court has personal jurisdiction over Defendant because Defendant is headquartered and incorporated in Kentucky, solicits business in the State of Kentucky, conducts business in the State of Kentucky, and Defendant otherwise has sufficient minimum contacts with the State of Kentucky, and such contacts are continuous and systematic.

13. Venue is proper in this Court under 28 U.S.C. § 1391 as a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district.

**Defendant's Marketing Tactics**

14. Part of Defendant's business includes marketing its products and services through text message marketing.

15. At all times relevant to this Complaint, Plaintiff owned a cell phone, bearing the phone number 812-XXX-3752.

16. At all times relevant to this Complaint, Plaintiff's cell phone account/number was registered in her individual name and not in the name of a business.

17. Plaintiff used the cell phone/number primarily for personal purposes, namely, to communicate with friends and family members.

18. On December 17, 2018, Plaintiff received a text message from Defendant. Plaintiff responded to the text message by stating, "stop."

19. Defendant immediately responded to Plaintiff's request by stating, "CallFire Alerts: You have opted out of this program & will no longer receive any messages."

20. Defendant despite promising to honor Plaintiff's request to no longer receive text messages from Defendant, broke its promise and continued to send Plaintiff text messages.

21. On November 26, 2020, Defendant or someone acting on its behalf sent Plaintiff a text message, stating, "Happy Thanksgiving from Vitality! Get 50% off w/our Fat Free Black Friday sale! You can get our 40-day program for only $749 Sale ends 11/30. Call 5024427180."

22. On November 27, 2020, Defendant or someone acting on its behalf sent Plaintiff a text message, stating, "How about using Black Friday to invest in your health? Call Vitality Wellness & Weight Loss to get 50% off on our Fat Free Black Friday Sale! Call 5024427180."

23. On November 30, 2020, Defendant or someone acting on its behalf sent Plaintiff a text message, stating, "Last day of Vitality's Black Friday sale! If you call tomorrow the price will be back to normal! Get 50% off & only pay $749 for a 40-day program. 5024427180."

24. On or about November 25, 2021, Defendant or someone acting on its behalf sent Plaintiff a text message, stating, "Happy Thanksgiving from Vitality! Get 50% off with our Fat Free Black Friday sale! Get our 40-day program for only $995. Sale ends 11/30. Call 5024427180."

25. The phone number for Defendant's Kentucky location is identified on its website as 502-442-7180.

26. Each of the text messages Plaintiff received was sent from short code number 67076.

27. On information and belief, Defendant used short code 67076 for marketing purposes.

28. Defendant's conduct violated the privacy rights of Plaintiff and the putative class

4

members, as they were subjected to annoying and harassing text messages. Defendant's text messages intruded upon the rights of Plaintiff and the putative class members to be free from invasion of their interest in seclusion.

29. Defendant's conduct caused Plaintiff and the putative class members to waste time addressing and/or otherwise responding to the unwanted text messages, particularly after previously requesting to no longer receive text messages and after Defendant promised to no longer send Plaintiff and the putative class members text messages.

30. On information and belief, Defendant sent text messages to Plaintiff and the putative class members for the purpose of selling its products and services.

## **DIRECT AND VICARIOUS LIABILITY**

31. Without the benefit of discovery, and because Defendant's identity was disclosed in the text messages at issue, Plaintiff assumes Defendant directly sent the text messages at issue.

32. However, if some or all the text messages were made by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

33. On May 9, 2013, the FCC determined that telephone solicitors like Defendant could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

34. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

35. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

36. If Defendant directly placed the text messages at issue to Plaintiff and the putative class members, Defendant is directly liable for the placing such text messages.

37. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

38. If Defendant did not directly place the text messages at issue to Plaintiff and the putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

39. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting revenue generated through unlawful telemarketing communications.

40. On information and belief, Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

41. On information and belief, Defendant acted as a principal to telemarketing agent(s) who were acting on their behalf.

42. Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

43. For the count identified below, if Defendant directly sent the text messages at issue, it is directly liable. Alternatively, to the extent any calls were made by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

**Class Allegations**

44. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

45. Plaintiff seeks to represent the following class:

> All persons in the United States who from four years prior to the filing of this action through class certification to whom: (1) Defendant or someone acting on its behalf sent text messages marketing its products or services; (2) Defendant or someone acting on its behalf sent more than one text message to the person in a twelve-month period; and, (3) said text messages were sent after the recipient requested via text message that Defendant or someone acting on its behalf stop sending them text messages.

46. Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

47. The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

48. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

49. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether Defendant sent text messages to Plaintiff and the putative class members after they requested that Defendant no longer send them text messages;

    b. Whether Defendant's conduct violates 47 U.S.C. § 227(c);

    c. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and,

    d. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

50. Plaintiff's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

51. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

52. Plaintiff and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

53. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not

most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

54. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

55. Questions of law and fact, particularly the propriety of sending text messages to persons who requested that Defendant no longer text them, i.e., to place them on Defendant's internal do not call list, predominate over questions affecting only individual members.

56. Defendant has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

### Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

57. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

58. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

59. The regulations prescribed under Section 227(c) require companies like Defendant, who engage in sending telephone solicitations to effectively institute and implement "procedures for maintaining a list of persons who request not to receive telemarketing calls on or behalf of that

person or entity." *See* 47 C.F.R. § 64.1200(d).

60. These procedures must meet several minimum standards, including, but not limited to:

> **(1)** *Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> **(2)** *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> **(3)** *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> **(4)** *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.
>
> **(5)** *Affiliated persons or entities.* In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

> **(6) *Maintenance of do-not-call lists.*** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

See 47 C.F.R. § 64.1200(d)(1)-(6).

61. Defendant failed to maintain and/or implement these minimum standards by repeatedly sending text messages to Plaintiff and the putative class members after Plaintiff and the putative class members requested that Defendant stop sending them text messages.

62. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers that should have been placed on Defendant's internal do not call list. See 47 U.S.C. §§ 227(c)(5)(A).

63. By sending text messages to the phones of Plaintiff and the putative class members after their numbers should have been placed on Defendant's internal do not call list, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

64. Defendant knew or should have known that Plaintiff and the putative class members did not wish to receive text messages as such persons expressly advised Defendant that they did not wish to receive text messages from Defendant.

65. Plaintiff and the putative class members are entitled to damages of $500.00 per violation for each text message sent by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

**Demand for Judgment**

WHEREFORE Plaintiff Sara Sherley, individually, and on behalf of the putative class members, requests that the Court enter judgment in her favor and against Defendant Custom Fat Loss, LLC d/b/a Vitality Wellness & Weight Loss and requests the Court grant the following relief:

  a. Enter an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative;

  b. Enter an order appointing Plaintiff's counsel as counsel for the class;

  c. Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of the TCPA, or up to $1,500 per violation of the TCPA if Defendant willfully violated the TCPA;

  d. Enter a judgment in favor of Plaintiff and the putative class that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from sending text messages to persons who have requested that Defendant stop texting them;

  e. Award Plaintiff and the class all expenses of this action, and require that Defendant pay the costs and expenses of class notice and administration; and,

  f. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff Sara Sherley demands a jury trial in this case.

Dated: November 18, 2024

Respectfully submitted,

/s/ *Erik D. Peterson*
Erik D. Peterson #KY93003
ERIK PETERSON LAW OFFICES PSC
110 West Vine Street, Suite 300
Lexington, Kentucky 40507
Telephone: (800) 614-1957
Email: erik@eplo.law

Christopher E. Roberts (*pro hac forthcoming*)
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Ave., Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700
Email: croberts@butschroberts.com

*Attorneys for Plaintiff Sara Sherley*